the search and seizure--well, the release and/or search procedures with regard to E, G & G with regard to this witness. That would apply to any question asked with regard to that topic, not just the specific objection I originally interposed. Thanks.

BY MS. TRUCCHI:

**Q Now I'd like to ask some specific questions about the memo we were looking at earlier, and I have a date of November 28, 2000. It's Bates stamped in ours as 2447, signed by Rudy Camacho. You do not have that document in front of you; is that correct?**

A That's correct.

**Q I'm going to read--but you do recall looking at it within the last week or so; is that correct?**

A Yes, briefly.

**Q As I mentioned, this is dated November 28, 2000, and it's a document from the U.S. Custom Service to port directors at Southern California. So, sir, from your prior testimony, would that mean that this was then to be distributed to all the port directors in Southern California?**

MR. STUTLER: Object. Calls for



speculation.

You can answer if you know.

THE WITNESS: That should have been the practice, but I do not know specifically--

BY MS. TRUCCHI:

**Q And that would--**

A But I do not know specifically the distribution of that precise memo.

**Q Okay. And that would include the--San Ysidro is considered--the port director at the San Ysidro border crossing would be considered a port director of Southern California CMC; is that correct?**

A Yes.

**Q And it's says "From: Director, Field Operations, Southern California CMC". Do you understand that person in November of 2000 to have been Mr. Rudy Camacho?**

A Yes.

**Q Now, this memo makes the following statement. In the first paragraph, last sentence, it says: "Therefore, the establishment of a consistent CMC-wide policy for ensuring these procedures are completed is as follows." And it says: "One, it is the responsibility of the**



**seizing officer to ensure that a complete and exam is done on the vehicle assigned to them." Is that your understanding of what policy was in San Ysidro in November of 2000?**

A That would have been the policy guidance they received from the field director, Rudy Camacho, yes.

**Q So that's what the officers were expected to do as far as searching these vehicles; is that correct?**

A Yes.

**Q And it says: "After removing all contraband from the vehicle, the seizing office will notify the SCC supervisor. The inspector and supervisor will then verify that all contraband has been removed by re-examining the seized vehicle." Is that your understanding of what the policy was in San Ysidro in November of 2000?**

A That would have been the policy guidance assigned through that memorandum to port directors. Precisely what occurred at San Ysidro at that time, I cannot answer.

**Q What does it mean to be a policy guidance?**

A Policy guidance is you provide the



written policy and the guidance to the port directors so that they can that and implement it at the ports of entry where the activity actually occurs and follow up those guidances.

**Q Okay. And then another statement made in this memo in Paragraph No. 2, it says: "It should be noted that officers should not focus on any one area, parens, for example, tank, parens, but should be inventive and resourceful in re-examining the entire seized vehicle in question." Is it your understanding that that was the policy in San Ysidro in November of 2000?**

A The answer remains the same as far as that would have been the guidance issued by Mr. Camacho, but in practice, I cannot speak to the absolute detail that would occur every hour of every day in San Ysidro. The expectation is yes.

**Q Okay. So I'm going to go through a few more statements in the memo and ask that same question. I understand that it's--I'm looking more towards whether it was the guidance as imposed to whether it was implemented and whether it was the policy.**

**Then it says in paragraph 3: "A pre-departure inspection of the seized conveyances**