**Q. And how about as a canine officer?**
A. Well, San Diego field office. When you say San Ysidro, it's both San Ysidro, Otay Mesa.
**Q. And prior to Customs inspector what did you do?**
A. I was a college student.
**Q. Okay. I knew we'd get back to that point.**
**Besides training you've had since you've been in Customs, did you have any training relating to searches of vehicles or use of canines in searches of vehicles.**
A. Can you repeat?
**Q. Prior to the time you joined Customs, did you have any training?**
A. No.
**Q. What did you study in college?**
A. I was a history major.
**Q. Okay. And who would be your immediate supervisor now?**
A. Del Fasano.
**Q. And who was your immediate supervisor in January of 2001?**
A. I think that would have been J. Ahern, Mr. Ahern.
**Q. Okay. Now, am I correct you've been asked to provide expert opinions in this case?**
A. I've been designated as a federal employee with knowledge in this case on the standards of care, policies, and procedures for searching and inspecting seized and forfeited vehicles.
**Q. Standards of care and policies and procedures for what?**
A. Searching and inspecting seized and forfeited vehicles.
**Q. Okay. Have you ever acted as an expert, to your knowledge, in any civil litigation before?**
A. No.
**Q. And have you reviewed any documents to prepare for providing expert opinions?**
A. Yes, I looked at the reports of investigation, officers' reports. I reviewed the policy memoranda and files from the procedures -- previous procedures in place. I reviewed Mr. Marilao's deposition and his reports.
**Q. Okay. When you say reports and investigations and files from previous procedures, let me ask you this: Did you happen to look a stack of documents similar to this that was Bates stamped?**
A. I don't know what Bates stamped means.
MR. STUTLER: He looked at these same things.
MS. TRUCCHI: So, Counsel, is it correct those first two categories would be the two stacks you've provided to me?
MR. STUTLER: What were the first two categories?
MS. TRUCCHI: Oh, the first two categories were reports and investigations filed from previous procedures.
MR. STUTLER: Yeah. The only reason I'm hesitating is I think Marilao's reports are in here, but I can't recall if that was in this set or this stack.
MS. TRUCCHI: But it's documents that you've produced?
MR. STUTLER: Oh, yeah. And you've covered it in the different depositions. I'm pretty sure they are in here.
MS. TRUCCHI: And, Tim, just for the record, we're talking about the stack that you've provided to me that's Bates stamped 2405 through 2571, and then the one that's 2572 through 3048. Is that correct?
MR. STUTLER: Yes. And also I showed him the ones that are 3049 to 3136.
MS. TRUCCHI: Do I have those?
MR. STUTLER: Yeah, these were produced. It's those ones.
MS. TRUCCHI: Okay. And is it correct to say, then, that the documents that he's been provided and he has reviewed are in these three packages, which have already been produced to me and we've already put the page numbers on the record?
MR. STUTLER: Yes. Assuming the reports of investigation are in there, and I am pretty sure they are. Remember the O'Connor report and the one that Joe Marilao put together.
We can dig as we go through this. I can flip through this.
BY MS. TRUCCHI:
**Q. And then, sir, besides those three packets and Officer Marilao's deposition testimony, you haven't reviewed anything else?**
A. No.
**Q. Have you ever seen photographs of the marijuana that was removed from the vehicle in Mexico?**
A. I don't think I have.
**Q. Do you know what happened in the Mexican criminal proceedings involving Mr. Rivera and Mr. Calderon?**
A. In a general sense I know about the case from the media, but I don't have any other specific knowledge of it.