**EXHIBIT 6**

1. No. 05-370C

(Judge Lettow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ADRIAN RODRIGUEZ AND ALI JAZMIN RODRIGUEZ

Plaintiffs,

v.

UNITED STATES OF AMERICA

Defendants.

---

DECLARATION OF TERESA TRUCCHI IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

---

TERESA TRUCCHI SBN# 135543
SUPPA, TRUCCHI, AND HENEIN, LLP
3055 India Street
San Diego, CA 92103
Telephone: (619) 297-7330
Telefax : (619) 297-9658

Attorneys for PLAINTIFFS

ADRIAN RODRIGUEZ AND ALI JAZMIN RODRIGUEZ

1. I am the attorney for the plaintiffs in the above entitled matter.

2. I attended the following depositions:

a. Deposition of Jayson Ahern on 6-4-04.

b. Deposition of Robert Root on 6-24-04.

c. Deposition of David Murphy on 6-24-04

d. Deposition of Officer Joseph Marilao on 6-9-04

e. Deposition of Robert Bickers on 6-9-04

3. A true and correct copy of the transcript of the testimony provided by the above referenced deponents is attached to this appendix as follows:

a. Deposition of Jayson Ahern on 6-4-04 as Exhibit 1

b. Deposition of Robert Root on 6-24-04 as Exhibit 2.

c. Deposition of David Murphy on 6-24-04 as Exhibit 3.

d. Deposition of Officer Joseph Marilao on 6-9-04 as Exhibit 4.

e. Deposition of Robert Bickers on 6-9-04 as Exhibit 5.

4. The fact that the duty to search existed, and was breached by the USA, is further evidenced by Michael Levine, Plaintiff's expert on he standards and policies of USA customs department. As set forth in the report of Mr. Levine, USA is required under its policies and procedures to search any automobile when there is probable cause to suspect narcotics to be hidden within the vehicle, and that the USA's search of the automobile was "significantly substandard and incomplete."

I declare under penalty of perjury under the laws of the United States of America that this declaration is true and correct to the best of my personal knowledge and/or information and belief.

Dated:

TERESA TRUCCHI

**EXHIBIT 7**

No. 05-370C

(Judge Lettow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ADRIAN RODRIGUEZ AND ALI JAZMIN RODRIGUEZ

Plaintiffs,

v.

UNITED STATES OF AMERICA

Defendants.

---

DECLARATION OF ALI JAZMIN RODRIGUEZ IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

---

TERESA TRUCCHI SBN# 135543
SUPPA, TRUCCHI, AND HENEIN, LLP
3055 India Street
San Diego, CA 92103
Telephone: (619) 297-7330
Telefax : (619) 297-9658

Attorneys for PLAINTIFFS

ADRIAN RODRIGUEZ AND ALI JAZMIN RODRIGUEZ

I. ALI JAZMIN RODRIGUEZ hereby declare under penalty of perjury under the laws of the United States of America as follows:

1. I am one of the plaintiffs in the above referenced matter.

2. On March 3, 2003, my husband, Adrian Rodriguez and I purchased a Volkswagen Passat at an auction conducted by EG&G/McCormick for the Department of Homeland Security of the UNITED STATES OF AMERICA.

3. On July 17, 2003, Adrian Rodriguez took the vehicle to a mechanic in Tijuana because it was making an unusual sound. It is not uncommon to take vehicles to Tijuana for repair as the cost is much lower. I am informed and believe that the vehicle was found to have 33 pounds of marijuana in a box on the underside of the body. Upon discovery of the marijuana, Adrian Rodriguez asked the mechanic to call the police. The Tijuana police arrived and Adrian Rodriguez was arrested. Adrian Rodriguez was in Federal Prison in Mexico from and after July 17, 2003 until August 15, 2003 when he was released.

4. We were referred to the auction by a friend. At no time did I ever see the brochure purportedly published by EG&G in Def. App. 48.

5. To the best of my recollection, at no time did I see the sales catalog for the auction. I signed a bidder registration form but was not provided with a sales catalog to the best of my recollection.

6. I recall receiving a Certificate to Obtain Title but I do not recall receiving an invoice with a disclaimer on it.

7. It was my understanding that this was an auction after a seizure by the USA. I believed that the USA had the best detection devices available and would completely search a vehicle before selling it. At no time was I aware that the seizure searches were being limited so that the USA could make more money off of buyers like my husband and I at a subsequent auction. If I had known this, I would never have purchased this vehicle as the risk would just have been too much. I agreed to the transaction because I believed that a reasonable search had occurred in connection with the seizure and prior to the sale. I did not realize that by buying this vehicle I would expose myself and my husband to the risk of arrest for transporting over 33 pounds of marijuana. At no time did I think that my own government would limit seizure searches -- and sell me a vehicle still full of drugs -- just to make a little more on the sale. I would not have purchased this vehicle had these facts been made known to me.

I declare under penalty of perjury under the laws of the United States of America that this declaration is true and correct to the best of my personal knowledge and/or information and belief.

Dated:

ALI JAZMIN RODRIGUEZ

**EXHIBIT 8**

No. 05-370C

(Judge Lettow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ADRIAN RODRIGUEZ AND ALI JAZMIN RODRIGUEZ

Plaintiffs,

v.

UNITED STATES OF AMERICA

Defendants.

---

DECLARATION OF ADRIAN RODRIGUEZ IN OPPOSITION TO MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

TERESA TRUCCHI SBN# 135543
SUPPA, TRUCCHI, AND HENEIN, LLP
3055 India Street
San Diego, CA 92103
Telephone: (619) 297-7330
Telefax : (619) 297-9658

Attorneys for PLAINTIFFS

ADRIAN RODRIGUEZ AND ALI JAZMIN RODRIGUEZ

I. ADRIAN RODRIGUEZ hereby declare under penalty of perjury under the laws of the United States of America as follows:

1. I am one of the plaintiffs in the above referenced matter.

2. On March 3, 2003, my wife, Ali Jazmin Rodriguez and I purchased a Volkswagen Passat at an auction conducted by EG&G/McCormick for the Department of Homeland Security of the UNITED STATES OF AMERICA.

3. On July 17, 2003, I took the vehicle to a mechanic in Tijuana because it was making an unusual sound. It is not uncommon to take vehicles to Tijuana for repair as the cost is much lower. The vehicle was found to have 33 pounds of marijuana in a box on the underside of the body. Upon discovery of the marijuana, I asked the mechanic to call the police. The Tijuana police arrived and I was arrested. I was in Federal Prison in Mexico from and after July 17, 2003 until August 15,

2003 when I was released.

4. We were referred to the auction by a friend. At no time did I ever see the brochure purportedly published by EG&G in Def. App. 48.

5. To the best of my recollection, at no time did I see the sales catalog for the auction. My wife signed a bidder registration form but was not provided with a sales catalog to the best of my recollection.

6. I recall receiving a Certificate to Obtain Title but I do not recall receiving an invoice with a disclaimer on it.

7. It was my understanding that this was an auction after a seizure by the USA. I believed that the USA had the best detection devices available and would completely search a vehicle before selling it. At no time was I aware that the seizure searches were being limited so that the USA could make more money off of buyers like my wife and I at a subsequent auction. If I had known this, I would never have purchased this vehicle as the risk would just have been too much. I agreed to the transaction because I believed that a reasonable search had occurred in connection with the seizure and prior to the sale. I did not realize that by buying this vehicle I would expose myself to the risk of arrest for transporting over 33 pounds of marijuana. At no time did I think that my own government would limit seizure searches -- and sell me a vehicle still full of drugs -- just to make a little more on the sale. I would not have purchased this vehicle (with my wife) had these facts been made known to me.

I declare under penalty of perjury under the laws of the United States of America that this declaration is true and correct to the best of my personal knowledge and/or information and belief.

Dated:

ADRIAN RODRIGUEZ

**EXHIBIT 9**

No. 05-370C

(Judge Lettow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ADRIAN RODRIGUEZ AND ALI JAZMIN RODRIGUEZ

Plaintiffs,

v.

UNITED STATES OF AMERICA

Defendants.

---

DECLARATION OF FRANCISCO JAVIER RIVERA AGREDANO IN OPPOSITION TO MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

TERESA TRUCCHI SBN# 135543
SUPPA, TRUCCHI, AND HENEIN, LLP
3055 India Street
San Diego, CA 92103
Telephone: (619) 297-7330
Telefax : (619) 297-9658

Attorneys for PLAINTIFFS

ADRIAN RODRIGUEZ AND ALI JAZMIN RODRIGUEZ

I. FRANCISCO JAVIER RIVERA AGREDANO, hereby declare under penalty of perjury under the laws of the United States of America as follows:

1. I am one of the plaintiffs in the related case of Rivera, et. al. v. USA [05-608c].

2. I am a citizen of the Country of Mexico and authorized to enter the United States to conduct business.

3. On September 5, 2001, I acquired the1987 Nissan Pathfinder VIN:JN8HD16Y7HW029972 (hereinafter SUBJECT VEHICLE) from the Department of Treasury in a Public Auction following a Customs Service Department Federal Forfeiture Sale.

4. On Thursday, January 24, 2002 I was traveling in the SUBJECT VEHICLE from the City of Ensenada, Baja California to the City of Tijuana, Baja California. I was accompanied by plaintiff ALFONSO CALDERON. We were stopped at a Highway Check Point at the location known as El Sauzal, Ensenada, Baja California by Mexican authorities. The SUBJECT VEHICLE was searched. The Mexican authorities discovered twenty two (22) packages containing marijuana (weighing 17 kilograms total.) The packages were between the upholstery walls and the body of the vehicle (the wheel well.)

5. We were arrested and were in Federal Prison in Mexico from and after January 24, 2002 until our release on January 10, 2003 (upon a finding of innocence).

6. Jose Blanco Loya, an expert witness from the Office of the Attorney General (in Mexico), tested the marijuana on January 25, 2002. On February 13, 2002, Mr. Blanco testified before the 11th Federal District Court of Ensenada that the marijuana found by the Mexican authorities on January 24, 2002 was "highly dehydrated, consistency and texture had been lost, and due to color lost, it had a 'brownie' color trend .... change in texture and consistency is also due to they (sic) have been stored or exposed to certain physical or atmospherical conditions, change in color is due to an old or stored marijuana ...." [see also, Declaration of Carlos Mejia, Pl. App. 11; Cmp. para. 19]

7. On March 11, 2002, expert chemists Rafael Garcia Gutierrez and Miguel Carrillo Mendivil, qualified as experts in the Federal Court, testified as follows: "(the marijuana) is highly dehydrated, it has a brownie color ... it is observable that is marijuana that has been stored for a long time and not only that, at opening a 'rotten' odor comes from the packages.... it is assumed that such illegal drug was exposed to adverse atmospherical and physical conditions for a long time." [see also, Declaration of Carlos Mejia, Pl. App. 11; Cmp. para. 20]

8. Thereafter, in a response to a Freedom of Information Act request filed by plaintiffs' counsel, photographs were produced by CUSTOMS showing that the area wherein the Mexican officials discovered the marijuana in January of 2002 had not been searched by USA prior to the sale to RIVERA. [Cmp. para. 21][see also; Declaration of Carlos Mejia, Pl. App. 11]

9. To the best of my recollection, at no time did I see the sales catalog for the auction. I signed a bidder registration form but was not provided with a sales catalog to the best of my recollection.

10. I recall receiving the Certificate to Obtain Title but I do not recall receiving an invoice or any other document with a disclaimer on it stating that the purchase was "as-is".

11. It was my understanding that this was an auction after a seizure by the USA. I believed that the USA had the best detection devices available and would completely search a vehicle before selling it. At no time was I aware that the seizure searches were being limited so that the USA could make more money off of buyers at a subsequent auction. If I had known this, I would never have purchased this vehicle as the risk would just have been too much. I agreed to the transaction because I believed that a reasonable

search had occurred in connection with the seizure and prior to the sale. I did not realize that by buying this vehicle I would expose myself to the risk of arrest for transporting over 33 pounds of marijuana. At no time did I think that the USA government would limit seizure searches -- and sell me a vehicle still full of drugs -- just to make a little more on the sale. I would not have purchased this vehicle had these facts been made known to me.

I declare under penalty of perjury under the laws of the United States of America that this declaration is true and correct to the best of my personal knowledge and/or information and belief.

Dated:

FRANCISCO JAVIER RIVERA AGREDANO

**EXHIBIT 10**

No. 05-370c

(Judge Lettow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ADRIAN RODRIGUEZ AND ALI JAZMIN RODRIGUEZ

Plaintiffs,

v.

UNITED STATES OF AMERICA

Defendants.

---

DECLARATION OF ALFONSO CALDERON LEON IN OPPOSITION TO MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

TERESA TRUCCHI SBN# 135543
SUPPA, TRUCCHI, AND HENEIN, LLP
3055 India Street
San Diego, CA 92103
Telephone: (619) 297-7330
Telefax : (619) 297-9658

Attorneys for PLAINTIFFS

ADRIAN RODRIGUEZ AND ALI JAZMIN RODRIGUEZ

I, ALFONSO CALDERON LEON, hereby declare under penalty of perjury under the laws of the United States of America as follows:

1. I am one of the plaintiffs in the related case of Rivera, et. al. v. USA [05-608c].

2. I am a citizen of the Country of Mexico and authorized to enter the United States to conduct business.

3. On September 5, 2001, my partner and brother-in-law, FRANCISCO JAVIER RIVERA AGREDANO acquired the1987 Nissan Pathfinder VIN:JN8HD16Y7HW029972 (hereinafter SUBJECT VEHICLE) from the Department of Treasury in a Public Auction following a Customs Service Department Federal Forfeiture Sale. We bought the vehicle to use in our printing business.

4. On Thursday, January 24, 2002 I was traveling in the SUBJECT VEHICLE from the City of Ensenada, Baja California to the City of Tijuana, Baja California. I was accompanied by plaintiff RIVERA. We were working for our printing company and delivering materials to Cali-Max (a grocery store). We were stopped at a Highway Check Point at the location known as El Sauzal, Ensenada, Baja California by Mexican authorities. The SUBJECT VEHICLE was searched. The Mexican authorities discovered twenty two (22) packages containing marijuana (weighing 17 kilograms total.) The packages were between the upholstery walls and the body of the vehicle (the wheel well.)

5. We were arrested and were in Federal Prison in Mexico from and after January 24, 2002 until our release on January 10, 2003 (upon a finding of innocence).

6. Jose Blanco Loya, an expert witness from the Office of the Attorney General (in Mexico), tested the marijuana on January 25, 2002. On February 13, 2002, Mr. Blanco testified before the 11th Federal District Court of Ensenada that the marijuana found by the Mexican authorities on January 24, 2002 was "highly dehydrated, consistency and texture had been lost, and due to color lost, it had a 'brownie' color trend .... change in texture and consistency is also due to they (sic) have been stored or exposed to certain physical or atmospherical conditions, change in color is due to an old or stored marijuana ...." [see also, Declaration of Carlos Mejia, Pl. App. 11; Cmp. para. 19]

7. On March 11, 2002, expert chemists Rafael Garcia Gutierrez and Miguel Carrillo Mendivil, qualified as experts in the Federal Court, testified as follows: "(the marijuana) is highly dehydrated, it has a brownie color ... it is observable that is marijuana that has been stored for a long time and not only that, at opening a 'rotten' odor comes from the packages.... it is assumed that such illegal drug was exposed to adverse atmospherical and physical conditions for a long time." [see also, Declaration of Carlos Mejia, Pl. App. 11; Cmp. para. 20]

8. Thereafter, in a response to a Freedom of Information Act request filed by plaintiffs' counsel, photographs were produced by CUSTOMS showing that the area wherein the Mexican officials discovered the marijuana in January of 2002 had not been searched by USA prior to the sale to RIVERA. [Cmp. para. 21][see also; Declaration of Carlos Mejia, Pl. App. 11]

9. To the best of my recollection, at no time did I see the sales catalog for the auction. RIVERA signed a bidder registration form but was not provided with a sales catalog to the best of my recollection.

10. RIVERA received the Certificate to Obtain Title but I do not recall receiving an invoice or any other document with a disclaimer on it stating that the purchase was "as-is".

11. It was my understanding that this was an auction after a seizure by the USA. I believed that the USA had the best detection devices available and would completely search a vehicle before selling it. At no time was I aware that the seizure searches were being limited so that the USA could make more money off of buyers at a subsequent auction. If I had known this, I would never have agreed that RIVERA

should purchase this vehicle for our printing business as the risk would just have been too much. I agreed to the transaction because I believed that a reasonable search had occurred in connection with the seizure and prior to the sale. I did not realize that by buying this vehicle I would expose myself to the risk of arrest for transporting over 33 pounds of marijuana. At no time did I think that the USA government would limit seizure searches -- and sell us a vehicle still full of drugs -- just to make a little more on the sale. I would not have agreed to the purchase of the vehicle or ridden in the vehicle had these facts been made known to me.

I declare under penalty of perjury under the laws of the United States of America that this declaration is true and correct to the best of my personal knowledge and/or information and belief.

Dated:

ALFONSO CALDERON LEON