# In the United States Court of Federal Claims

No. 05-370C

(Filed: January 30, 2006)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| **ADRIAN RODRIGUEZ and ALI JAZMIN RODRIGUEZ,** | ) | Sale on behalf of the Customs Service of a seized vehicle containing hidden drugs; alleged breach of contract; motion to dismiss; subject matter jurisdiction; standing; privity of contract; third party beneficiary; implied warranty; covenant of good faith and fair dealing |
| Plaintiffs, | ) | |
| v. | ) | |
| **UNITED STATES,** | ) | |
| Defendant. | ) | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |

Teresa Trucchi, Suppa, Trucchi & Henein, LLP, San Diego, CA, for plaintiffs.

Andrew P. Averbach, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Peter D. Keisler, Assistant Attorney General, Civil Division, David M. Cohen, Director, Commercial Litigation Branch, and Kathyrn A. Bleecker, Assistant Director, United States Department of Justice, Washington, D.C. Of counsel was Erik J. Gantzel, Attorney, Office of Assistant Chief Counsel, United States Customs and Border Protection, San Diego, CA.

## OPINION AND ORDER

LETTOW, Judge.

This case arises from the auction sale to plaintiff Ali Jazmin Rodriguez of a vehicle that had been seized by government customs agents. Subsequent to the sale, her husband, Adrian Rodriguez, legally drove the vehicle into Mexico where he and the vehicle were seized by Mexican officials upon the discovery that the vehicle contained a hidden cache of illegal drugs. The plaintiffs filed their complaint against the United States in this court on April 15, 2005, alleging breach of implied warranty, breach of contract, and breach of the implied covenant of good faith and fair dealing. The government filed a motion to dismiss, or in the alternative for summary judgment, asserting that this court does not have subject matter jurisdiction over claims

grounded in tort, that plaintiff Adrian Rodriguez lacks standing under either a theory of privity of contract or as an intended third party beneficiary, that both plaintiffs have failed to state a valid claim, and otherwise that summary judgment in the government's favor is appropriate on the ground that no implied warranty of any kind existed in connection with the sale of the vehicle.

The court conducted a hearing on the government's motion on December 22, 2005. For the reasons stated below, the government's motion to dismiss is granted with respect to plaintiff Adrian Rodriguez, but that motion and the alternative motion for summary judgment are denied with respect to plaintiff Ali Jazmin Rodriguez.

## BACKGROUND[1]

On or about June 6, 2001, a 1991 Volkswagen Passat with Vehicle Identification Number WVWFB4316ME017877 (the "vehicle") was sold to an individual who registered it in Tijuana, Mexico. Compl. ¶¶ 6-7. The individual drove the vehicle into the United States at the San Ysidro, California port of entry on November 18, 2002. Compl. ¶ 8. At the port, the vehicle was seized by the United States Customs Service ("Customs Service")[2] after an officer searched the vehicle and discovered 32 packages of marijuana hidden in the rear bumper and dashboard, in total weighing approximately 33 pounds. Compl. ¶ 9; Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Mot.") at 3. On February 20, 2003, the Customs Service declared the vehicle forfeited pursuant to 19 U.S.C. § 1595a and in accordance with 19 U.S.C. §§ 1608, 1610. Compl. ¶¶ 10, 12; *see* Def.'s Mot. at 3.

On March 5, 2003, a U.S. Customs Select Consignors and Bankruptcy Public Vehicle Auction ("auction") was conducted on behalf of the United States by McCormack Auction Company ("McCormack"), in conjunction with EG&G Technical Services ("EG&G") which organized the forfeiture sale and to whom the vehicles were consigned. Def.'s Mot. at 3. EG&G published a brochure that advertised this and ten other auctions that were conducted between November 6, 2002 and September 3, 2003; the brochure included the terms and conditions of the sales. *Id.*; Appendix in Support of Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment ("Def.'s App.") at 47-48 (Public Auctions Brochure (2002)). At the auction, Ali Jazmin Rodriguez, as a condition of participation, completed and signed an EG&G bidder registration form. Def.'s Mot. at 4; *see* Def.'s App. at 50 (Bidder Registration Form (March 5, 2003)). A sales catalog also was available at the auction that included the terms and conditions

---

[1]The recitations that follow do not constitute findings of fact by the court. Rather, the recited factual elements are taken from the parties' filings and are either undisputed or alleged and assumed to be true for purposes of the pending motions.

[2]The Customs Service is now part of the Border and Transportation Security component of the Department of Homeland Security and is known as the Bureau of Customs and Border Protection. *See* 19 U.S.C. § 2703 note (quoting Pub. L. No. 108-429, Title V, § 5001, 118 Stat. 2604 (Dec. 3, 2004)).

of the sale along with a listing of the vehicles that would be sold. Def.'s App. at 51-60 (Sales Catalog); *see* Def.'s Mot. at 4. Ali Jazmin Rodriguez successfully bid on and ultimately purchased the vehicle in question for $600, as well as a 1982 Volvo GL for $200. *See* Def.'s Mot. at 4; Def.'s App. at 61 (Invoice (Mar. 6, 2003)). An invoice, printed by McCormack, included a listing of the vehicles on which Mrs. Rodriguez bid, the total bids, any remaining balance due, and certain terms and conditions. *Id.* Title to the vehicle was officially transferred to Mrs. Rodriguez from the Customs Service on March 5, 2003. Def.'s App. at 62 (Certificate to Obtain Title to a Vehicle (Mar. 5, 2003)).[3]

Thereafter, Adrian Rodriguez, Ali Jazmin Rodriguez's husband, drove the vehicle to a mechanic in Tijuana on or about July 15, 2003 for repairs "because it [the vehicle] was making an unusual sound." Compl. ¶ 15; *accord* Def.'s Mot. at 4 & n.4. In the process of the mechanic's inspection of the vehicle, he discovered 33 pounds of marijuana in a box affixed to the underside of the vehicle's body. Compl. ¶ 16; Def.'s Mot. at 4-5. The manager of the repair shop contacted the municipal police of Tijuana who subsequently arrested Adrian Rodriguez and seized the vehicle. Compl. ¶ 16; Def.'s Mot. at 5. The municipal police transferred both Mr. Rodriguez and the vehicle into the custody of the Mexican Federal Agency of Investigations in Tijuana. Compl. ¶ 16.

On July 17, 2003, Adrian Rodriguez was formally indicted for violating various provisions of the Mexican criminal code. Compl. ¶ 17. A Mexican district court on July 23, 2003, ordered him imprisoned, suspended his political rights, and issued an Official Notice to the Federal Immigration Services of Mexico. Compl. ¶ 18.[4] On August 14, 2003, Mr. Rodriguez's counsel demonstrated to the Mexican district court that Mrs. Rodriguez had purchased the vehicle from a public auction of seized vehicles conducted on behalf of the U.S. Customs Service and that Mrs. Rodriguez was unaware of the fact that illegal narcotics were hidden in the vehicle.

---

[3]Only Ali Jazmin Rodriguez's name is printed on the title of the vehicle. Def.'s App. at 62 (Certificate to Obtain Title to a Vehicle). In their pleadings, the plaintiffs inconsistently allege that either Ali Jazmin Rodriguez purchased the vehicle or that both Ali Jazmin and Adrian Rodriguez purchased the vehicle. *Compare* Plaintiff's Response to Defendant Proposed Findings of Uncontroverted Facts ¶ 1 (filed Oct. 31, 2005) (not disputing defendant's assertion that Ali Jazmin Rodriguez purchased the vehicle), *with id.* ¶ 11 (alleging that both plaintiffs purchased the vehicle). *See* Plaintiff Adrian Rodriguez and Ali Jazmin Rodriguez's Opposition to Defendant USA's Motion to Dismiss, or in the alternative, for Summary Judgment ("Pls.' Amended Response") at 2; Plaintiffs' Appendix in Opposition to Motion to Dismiss and for Summary Judgment ("Pls.' App.") Ex. 8 (Declaration of Adrian Rodriguez (Nov. 18, 2005)) ¶ 2.

[4]Article 33 of the Constitution of the United Mexican States allows for the immediate expulsion from Mexico of any individual who is not a Mexican national and "whose remaining [the Federal Executive] may deem inexpedient." Constitución Política de los Estados Unidos Mexicanos, art. 33 (Mex.).

Compl. ¶¶ 19-20. As a result, the Mexican district court found Adrian Rodriguez innocent of all charges and ordered him released from prison. Compl. ¶ 20.

On October 22, 2003, the plaintiffs submitted a claim to the U.S. government for compensation, but that claim was "denied by operation of law on or about April 22, 2004." Compl. ¶ 22. On April 30, 2004, the plaintiffs sought relief in the United States District Court for the Southern District of California ("District Court") from the United States, McCormack, and EG&G. Def.'s App. at 17-29 (Complaint, *Adrian Rodriguez and Ali Jazmin Rodriguez v. United States of America*, *et al*., No. 04-CV-0905 JAH (BLM) (S.D. Cal. filed Apr. 30, 2004)). The plaintiffs asserted six causes of action for negligence, fraud and intentional misrepresentation, negligent misrepresentation, negligent infliction of emotional distress, intentional infliction of emotional distress, and violations of California's Consumer Legal Remedies Act. *Id*. The District Court, on December 7, 2004, dismissed all of plaintiffs' claims, but did grant the plaintiffs' request for leave to amend their complaint to assert contractual claims pursuant to the Tucker Act. Def.'s App. at 30-40 (Order of Dec. 7, 2004, *Adrian Rodriguez and Ali Jazmin Rodriguez v. United States of America*, *et al*., No. 04-CV-0905 JAH (BLM)). The parties subsequently stipulated that plaintiffs would file a second amended complaint asserting three contract claims and that the case would be transferred to the United States Court of Federal Claims. Def.'s App. 41-43 (Stipulation to Transfer and Dismiss Appeal (Feb. 3, 2005), *Adrian Rodriguez and Ali Jazmin Rodriguez v. United States of America*, *et al*., No. 04-CV-0905 JAH (BLM) (S.D. Cal.)).

Plaintiffs filed their complaint in this court on April 15, 2005.[5]

## STANDARDS FOR DECISION

Jurisdiction must established before this court may proceed to the merits of the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998). Plaintiffs have the burden of establishing the court's subject matter jurisdiction over their respective claims. *See McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army and Air*

[5]At least two other cases have been filed in which similar facts have been alleged. In *Agredano and Leon v. United States*, No. 05-608C (Fed. Cl. filed June 17, 2005), a purchaser of a previously seized vehicle that still contained drugs was arrested along with a passenger by Mexican officials who discovered drugs in the vehicle, and the purchaser and passenger were incarcerated in a Mexican jail. In a second case, *Cervantes v. United States*, 330 F.3d 1186 (9th Cir. 2003), the plaintiff tried to cross the U.S.-Mexican border in a previously seized vehicle that he had purchased, but which still contained contraband. *Id*. at 1187-88. The Ninth Circuit held that the plaintiff's alleged causes of action against the United States for false arrest and false imprisonment were precluded because customs agents had probable cause to arrest the plaintiff upon the discovery of hidden narcotics, but his claim under the Federal Tort Claims Act ("FTCA") was remanded because the 'detention of goods' exception to the government's waiver of sovereign immunity under the FTCA did not apply. *Cervantes*, 330 F.3d at 1188-90.

*Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). The court must "draw all reasonable inferences in favor of the plaintiff[s]" and accept as true the facts as they are asserted in the complaint when determining whether it has jurisdiction over a particular case. *Goel v. United States*, 62 Fed. Cl. 804, 806 (2004) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)); *see also Hamlet v. United States*, 873 F.2d 1414, 1415-16 (Fed. Cir. 1989). The court must deny defendant's motion to dismiss if the undisputed facts in the complaint reveal any possible basis on which plaintiffs might prevail. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) (concluding that if a court lacks jurisdiction to decide the merits of a case, then, as a matter of law, the court must dismiss the claim).

A court may grant summary judgment "if . . . [the record] show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rules of the Court of Federal Claims ("RCFC") 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the burden of establishing that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986). A dispute is "genuine" if it "may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. A fact is deemed "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. A court must resolve all inferences "'in the light most favorable to the party opposing the motion'" when deciding these issues. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). If a rational finder could reach only one reasonable conclusion, then a genuine issue of material fact does not exist. *See, e.g.*, *Matsushita*, 475 U.S. at 587.

## ANALYSIS

### A. Adrian Rodriguez's Claims

The government avers that Mr. Rodriguez lacks standing to raise claims based on breach of contract. First, the government alleges that this court lacks jurisdiction over any of plaintiff Adrian Rodriguez's claims because he was not in privity of contract with the United States. Def.'s Mot. at 9-10. The government specifically cites the Certificate to Obtain Title to a Vehicle whereby the United States certified that title to the vehicle was transferred to Ali Jazmin, not Adrian, Rodriguez. *Id.*; Def.'s App. at 62. Mr. Rodriguez counters that he is "arguably a party to the contract" with the United States "due to his status as a spouse in a community property state [California]." Plaintiffs' Response to Motion to Dismiss, or in the alternative, for Summary Judgment ("Pls.' Original Response") at 10. Secondarily, Mr. Rodriguez asserts that he is an intended third-party beneficiary of either an agreement between the United States and EG&G or the contract between the government and Mrs. Rodriguez, *see id*. at 10-11; Pls.' Amended Response at 1, 16-17, while the government contends that Mr. Rodriguez has not satisfied the requirements for establishing a third-party beneficiary status. *See* Defendant's Consolidated Reply to Plaintiffs' Opposition to Defendant's Motion [to] Dismiss, or in the

Alternative, for Summary Judgment, Response to Plaintiffs' Motions for Joinder, and Reply to Response to Motions to Strike ("Def.'s Reply") at 4-5.

1. *Privity of contract.*

Generally, "the 'government consents to be sued only by those with whom it has privity of contract.'" *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1289 (Fed. Cir. 1999) (quoting *Erickson Air Crane Co. of Wash. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984)). In the present case, despite the contradictory allegations in the plaintiffs' filings, *see supra*, at 3 n.3, only Ali Jazmin Rodriguez is in privity of contract with the United States pursuant to the transfer of title. *See* Def.'s App. at 62 (Certificate to Obtain Title to a Vehicle).[6] Adrian Rodriguez asserts that because he and his wife reside in a community property state, California, which also served as the location of the contract's execution, he possesses rights under the contract. *See* Pls.' Original Response at 10. Mr. Rodriguez's argument is unavailing. Under California state law, Mr. Rodriguez had no property rights either with respect to the executory contract for the vehicle or to the vehicle itself.[7] He was not a signatory to the contract

---

[6]"[W]hen a question of the [court's] jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist." *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) (citing *Wetmore v. Bymer*, 169 U.S. 115, 120 (1898)); *see Reynolds*, 846 F.2d at 747; *Ware v. United States*, 57 Fed. Cl. 782, 783 n.1 (2003). The procedure to reach a determination on an issue of jurisdiction "is left to the trial court." *Land*, 330 U.S. at 735 n.4 (quoting *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)). Where, as in the present case, "a motion to dismiss for lack of subject matter jurisdiction . . . challenges the truth of the jurisdictional facts alleged in the complaint, the . . . court may consider relevant evidence in order to resolve the factual dispute." *Reynolds*, 846 F.2d at 747 (citing *Land*, 330 U.S. at 735; *Zunamon v. Brown*, 418 F.2d 883, 886 (8th Cir. 1969)). The court has considered the evidence presented by the parties and has concluded that only Mrs. Rodriguez held title to the vehicle.

[7]In California, "[e]xcept as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during marriage while domiciled in this state is community property." Cal. Fam. Code § 760. However, "the affirmative act of specifying a form of ownership in the conveyance of title . . . removes such property from the more general [community property] presumption." *In re Marriage of Lucas*, 614 P.2d 285, 288 (Cal. 1980), *superseded in part by statute*, Cal. Fam. Code § 2640, *as recognized in In re Marriage of Walrath*, 952 P.2d 1124, 1130 (Cal. 1998); *see also In re Allustiarte*, 786 F.2d 910, 915-16 (9th Cir. 1986) (noting that the rebuttable record-title presumption is "stronger" than the general rebuttable presumption with respect to community property); William P. Hogoboom & Donald B. King, *California Practice Guide: Family Law* §§ 8:31-8:43 (a married couple acquires a motorboat using community property but takes title in the wife's name as her "sole and separate property" with the consequence that the boat is "rebuttably presumed [to be the w]ife's separate property"). An exception to superiority of the record-title presumption to the general community-property presumption arises in cases involving "a spousal property dispute." *In re*

with the United States and thus cannot exercise any rights under that contract. *See* Def.'s App. at 62; *Pacetti v. United States*, 50 Fed. Cl. 239, 252 (2001) (concluding that the plaintiff did not have standing to raise claims arising from the government's breach of an agreement with his spouse that pertained to her ability to reinvest sale proceeds in which he claimed a one-half interest under California marital property law); *see also Restatement (Second) of Contracts* § 2 (defining the parties to a contract). Therefore, Mr. Rodriguez may not invoke the Tucker Act, 28 U.S.C. § 1491(a)(1), to raise a claim for breach of contract because he was not in privity of contract with the United States.

2. *Third-party beneficiary claims.*

Adrian Rodriguez could maintain a claim against the United States if he was an intended third-party beneficiary pursuant to an existing contract between the government and another party. *See Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1259 (Fed. Cir. 2005) (addressing as a matter of standing, and thus as a jurisdictional issue, the question of whether a plaintiff was an intended third-party beneficiary of a contract). To be considered an intended third-party beneficiary, a "contract must 'reflect [] the express or implied intention of the parties to benefit the third-party.'" *Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997) (quoting *Schuerman v. United States*, 30 Fed. Cl. 420, 433 (1994)). "The intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended to be benefited thereby." *Montana*, 124 F.3d at 1273. The Federal Circuit reiterated this test in *Glass v. United States*, 258 F.3d 1349 (Fed. Cir. 2001), and extended the reasoning of *Montana* by stating that the contract must also reflect the intention to benefit the third party "directly." *Id.* at 1354 ("Third party beneficiary status is an 'exceptional privilege' and . . . a party must 'at least show that [the contract] was intended for his *direct* benefit.'") (quoting *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912) (emphasis added)); *see also Restatement (Second) of Contracts* § 302.

To determine whether Adrian Rodriguez is a third-party beneficiary, the court must consider whether he "'would [have] be[en] reasonable in relying on the promise as manifesting an intention to confer a right on him.'" *Flexfab*, 424 F.3d at 1260 (quoting *Montana*, 124 F.3d at 1273). Mr. Rodriguez asserts that he is an intended third-party beneficiary of a contract between the government and EG&G, and that this alleged contract was breached due to the inadequate search for illegal narcotics in the vehicle. *See* Pls.' Amended Response at 1. For purposes of acting on the pending motion, the court accepts that the United States and EG&G had a form of contract in place. *See* Hr'g Tr. 18:20 to 20:5 (Dec. 22, 2005) (statement by the government's

---

*Marriage of Haines*, 33 Cal. Rptr. 2d 673 (Cal. Ct. App. 1995); *see also* 5 Harry D. Miller & Marvin B. Starr, *Miller and Starr California Real Estate 3D* § 12:41 (stating that the record-title presumption "applies only in proceedings with third parties, and does not apply in actions between spouses."). The presumption that "[t]he owner of the legal title . . . is . . . the owner of the full beneficial title" can itself by rebutted by "clear and convincing proof." Cal. Evid. Code § 662.

counsel commenting that "any contract that might have existed between the United States and EG&G [as] basically [] an agency arrangement . . . [is] a fair characterization"). Mr. Rodriguez also provides statements from Customs Service officials that imply the possibility that the search of the vehicle was not conducted as thoroughly as regulations and policy required. Pls.' Amended Response at 3-7.

Nonetheless, even if the government had undertaken a duty with respect to EG&G to properly search the vehicle prior to sale, Mr. Rodriguez was not an intended third-party beneficiary. When a member of the public alleges standing to sue as an intended third-party beneficiary of a government contract, the purpose of which is to render a public service, the public citizen is "considered to be [an] incidental third-party beneficiar[y] unless [he] can show a direct right to compensation." *Montana*, 124 F.3d at 1273 n.6 (citing *Schuerman*, 30 Fed. Cl. at 430); *see also Restatement (Second) of Contracts* § 315 ("An incidental beneficiary acquires by virtue of the promise *no right* against the promisor or the promisee." (emphasis added)). In the present case, the government had removed contraband from the vehicle to satisfy the federal government's societal purpose to protect the public and ensure that illegal drugs are outside the general stream of commerce. *See Gonzales v. Raich*, __ U.S. __, 125 S. Ct. 2195, 2202-04 (2005) (summarizing aspects of the federal government's anti-drug policy); *see also* Pls.' App. Ex. 1 (Deposition of Jason Ahern (June 4, 2004), in *Rivera Agredano, et al. v. United States*, *et al*., No. 02-CV-2243 B (NLS) (S.D. Cal.)) at 7:4-18 (stating that the "principal responsibility" of "narcotics enforcement" within the Customs Service was "[t]o interdict the narcotics coming into the country").[8] In short, Mr. Rodriguez has failed to establish any direct right to compensation arising from a breach of an agreement between the Customs Service and EG&G. *See Montana*, 124 F.3d at 1273 n.6. Consequently, he did not "stand to directly benefit under" a contract between the United States and EG&G, and thus he can only be considered, at most, an incidental, not intended, third-party beneficiary. *See Glass*, 258 F.3d at 1355.

---

[8]The exhibits the plaintiffs include in the appendix to their opposition to the defendant's motion were generated as part of a separate legal proceeding, *Rivera Agredano, et al. v. United States*, *et al*., No. 02-CV-2243 B (NLS) (S.D. Cal. filed Nov. 14, 2002), that has since been dismissed and was unrelated to the present case. For purposes of addressing the pending motion, the court has accepted these exhibits pursuant to Fed. R. Evid. 801(d)(2)(d) which defines as not hearsay a statement that "is offered against a party and is . . . a statement made by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Under that rule, the proffering party need not prove that the witness is unavailable nor does the party need also to invoke RCFC 32(a)(2) regarding admissibility of deposition testimony. *See Globe Sav. Bank, F.S.B. v. United States*, 61 Fed. Cl. 91, 94-97 (2004). In the present matter, all five deponents are current employees of the United States and they limited the subject matter of their statements to the scope of their employment. Pls.' App. Exs. 1-5. Their deposition testimony accordingly falls within Fed. R. Evid. 801(d)(2)(D). *See Globe*, 61 Fed. Cl. at 97 (citing *Aliotta v. National R.R. Passenger Corp.*, 315 F.3d 756, 761 (7th Cir. 2003)); *see also PR Contractors, Inc. v. United States*, __ Fed. Cl. __, 2006 WL 163226, at *5 (Jan. 20, 2006).

Mr. Rodriguez also claims the status of an intended third-party beneficiary with respect to the contract between the United States and Ali Jazmin Rodriguez. Compl. ¶ 36; Pls.' Amended Response at 1. The documents associated with the sale from the United States to Mrs. Rodriguez, including the Certificate to Obtain Title to a Vehicle, signed bidder registration form, invoice, and sales catalog, do not show any intent on the part of the government directly to benefit Adrian Rodriguez. *See* Def.'s App. at 49-62.

To shore up his argument, Mr. Rodriguez points to the court's decision in *Sullivan v. United States*, 54 Fed. Cl. 214 (2002). *See* Pls.' Original Response at 10. In that case, the contract mandated that a government contractor who transported mail for the United States Postal Service had to possess vehicle insurance. *Sullivan*, 54 Fed. Cl. at 215. The court held that there was a triable issue as to whether the purpose of this contractual provision was to confer any rights as a third-party beneficiary upon a person who was injured by the contractor while he operated the vehicle. *Id.* at 216-17. Unlike *Sullivan*, however, in the present case the context of the vehicle sales contract provides no indication that the government intended directly to benefit any third party. *See also Restatement (Second) of Contracts* § 315 ("Effect of a Promise of Incidental Benefit"). Consequently, Adrian Rodriguez is not an intended third-party beneficiary of the contract between the United States and Mrs. Rodriguez.

In sum, this court does not have subject matter jurisdiction to entertain any of Mr. Rodriguez's claims. He has no privity of contract with the government, and he is not an intended third-party beneficiary of an agreement between the government and EG&G or the contract between the Customs Service and Ali Jazmin Rodriguez. The government's motion to dismiss the claims of Adrian Rodriguez is accordingly granted because Mr. Rodriguez has no standing to pursue claims grounded in contract.

### B. Ali Jazmin Rodriguez's Claims

#### 1. *Breach of an implied contractual term and of an implied warranty.*

Mrs. Rodriguez seeks relief from the government on the ground that the Customs Service violated an implied warranty in the contract "that the [vehicle] was reasonably clear of contraband before releasing the same for sale to plaintiffs." Compl. ¶ 25.[9] From the breach,

[9]Mrs. Rodriguez asserts two separate causes of action: a breach of an implied term in the contract, Compl. ¶¶ 33-41, and a breach of an implied warranty of the contract. Compl. ¶¶ 23-32. The plaintiff avers that both the implied term and implied warranty in the contract were promises made by the government that it would conduct a "complete and thorough" search of the vehicle to ensure that it was "reasonably clear" of contraband prior to its sale. Compl. ¶¶ 25, 34. The existence of an implied warranty in the contract would, itself, be an implied term. Therefore, because the court concludes that there is no practical difference in the scope of the alleged implied term and the alleged implied warranty, it treats the first two causes of action in the plaintiff's complaint as a single claim.

Mrs. Rodriguez alleges she suffered "damages including, but not limited to, loss of liberty, pain and suffering, physical injuries, lost wages, loss of future earning capability, emotional distress, mental anguish, property damages, and other general and special damages." Compl. ¶ 41. The government counters that this court lacks subject matter jurisdiction over Mrs. Rodriguez's claim because the damages she seeks sound in tort and thus should be dismissed. Def.'s Mot. at 7-9. Alternatively, should this court find that it does possess jurisdiction over her claim, the government seeks summary judgment on the ground that the terms and conditions of the contract disclaimed any implied warranties. *Id*. at 15-17.

The Tucker Act explicitly states that this court "shall have jurisdiction to render judgment upon any claim against the United States . . . for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Correlatively, this court has very limited juridical power to award damages that are shaped by tort law in an action based on breach of contract. "The court lacks jurisdiction to award . . . damages for emotional distress and pain and suffering. Except in limited circumstances . . . not applicable here, the court cannot award damages for the emotional consequences of a breach of contract because such consequences are speculative as a matter of law." *Pratt v. United States*, 50 Fed. Cl. 469, 482 (2001) (citing *Bohac v. Dep't of Agriculture*, 239 F.3d 1334, 1340 (Fed. Cir. 2001); *Kania v. United States*, 650 F.2d 264, 269 (Ct. Cl. 1981); *H.H.O., Inc. v. United States*, 7 Cl. Ct. 703, 708 (1985)); *see also Restatement (Second) of Contracts* § 353. *But see Chain Belt Co. v. United States*, 115 F. Supp. 701, 712 (Ct. Cl. 1953) ("A tortious breach of contract is not a tort independent of the contract so as to preclude an action under the Tucker Act.").

Mrs. Rodriguez argues that the contract was breached when the government sold the vehicle to her without discovering 33 pounds of marijuana in a box hidden on the underside of the vehicle because the circumstances of the sale had created an implied warranty that a "thorough and adequate search" had been conducted. Compl. ¶¶ 35, 37-38. The damages she alleges, however, center on the injuries Adrian, not Ali Jazmin, Rodriguez, suffered when he "was arrested and imprisoned by the Mexican authorities." Compl. ¶¶ 31, 39, 54; *see* Def.'s Mot. at 10. As a plaintiff, Mrs. Rodriguez's claims for damages must be analyzed only with respect to the harm that she herself may have incurred. *See Restatement (Second) of Contracts* § 346 ("The *injured party* has a right to damages.") (emphasis added). The government is correct that Mrs. Rodriguez fails to specify damages that she actually suffered, except for generalized property damages. Def.'s Mot. at 10. Thus, most of the damages that Mrs. Rodriguez seeks are outside the subject matter jurisdiction of this court as they arise from conduct independent of the alleged breach of contract. Def.'s Mot. at 9; *see L'Enfant Plaza Properties, Inc. v. United States*, 645 F.2d 886, 892 (Ct. Cl. 1981) (citing *Burtt v. United States*, 176 Ct. Cl. 310, 313-14 (1966)); 28 U.S.C. § 1491(a)(1). Mrs. Rodriguez has implicitly recognized this deficiency because she has sought leave to amend her complaint to elaborate her request for general property damages. Hr'g Tr. 74:19 to 75:2. In this instance, because no answer has been filed, an amended complaint may be submitted as a matter of course by Mrs. Rodriguez. RCFC 7, 15(a). Even if the government had filed an answer, RCFC 15(a) would obligate the court to grant leave to file an amended complaint "freely . . . when justice so requires." The Supreme Court has listed a variety of

factors that a court should consider when determining whether to grant leave to amend, such as undue delay, bad faith, repeated failure to cure prior deficiencies, undue prejudice, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (interpreting Federal Rule of Civil Procedure 15(a), which is identical to RCFC 15(a)). In effect, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test h[er] claim on the merits." *Foman*, 371 U.S. at 182.

The government has argued that it would be futile for Mrs. Rodriguez to file an amended complaint because even if she did amend her complaint she would still not be entitled to any relief. Hr'g Tr. 76:22 to 77:7. Def.'s Reply at 11-12. However, contrary to the government's assertions, Mrs. Rodriguez could be entitled to relief if she were to amend her complaint and seek damages based purely upon contractual remedies, whether premised upon expectancy, reliance, or restitutionary theories. *See Restatement (Second) of Contracts* §§ 347, 371; *Restatement (Third) of Restitution and Unjust Enrichment (Tentative Draft No. 3 (March 22, 2004))* § 37(1)(b) ("a decree of rescission may require the defendant . . . to repay amounts received on account of the contract price"); *see also* Hr'g Tr. 75:21-24.

Even Mrs. Rodriguez's general allegations of property damages suffice to supply the court with subject matter jurisdiction over her claims for breach of contract premised upon the Tucker Act, 28 U.S.C. § 1491(a)(1). Nonetheless, such subject matter jurisdiction does not preclude the government from seeking either dismissal for failure to state a claim or a summary judgment, on the ground that the sale's terms and conditions disclaimed any warranty. Def.'s Mot. at 15-17. Therefore, the issue remaining before the court is whether Mrs. Rodriguez has stated a claim upon which relief can be granted for breach of an implied warranty.

The terms and conditions of the sale of the vehicle in question are set out in several documents. Prior to the auction, EG&G produced a pamphlet advertising eleven different government sales, listing their dates and locations. Def.'s App. at 47-48 (Public Auctions Brochure). That brochure also contained a section entitled "Terms and Conditions" that included the payment terms, how one registered to bid, and how vehicles that were successfully purchased should be removed. *Id*. at 48. In addition, under the "Terms and Conditions," the brochure stated that "[a]ll merchandise is sold 'As is, Where is' without warrant, or guarantee of any kind, stated, implied or otherwise. Please bid from your personal observations!" *Id*. Mrs. Rodriguez asserts that she never received or read the brochure printed by EG&G. Pls.' App. Ex. 7 (Declaration of Ali Jazmin Rodriguez (Nov. 18, 2005)) ¶ 4.

To participate in the auction conducted on March 5, 2003, an individual had to register to bid by completing and executing a Bidder Registration Form. Def.'s App. at 45 (Declaration of Charles F. Fulghum, West Region Director, EG&G (July 28, 2005)) ¶ 6; *see* Def.'s App. at 49 (Blank Bidder Registration Form). Mrs. Rodriguez did complete and sign such a form, and was assigned bidder number 167. Def.'s App. at 50 (Completed Bidder Registration Form). The form stated that the individual "agree[d] to comply with the terms of sale contained in the sale catalog for this sale." *Id*. The sale catalog listed a description of all the vehicles that would be

available at the auction and the terms and conditions of the sale. Def.'s App. at 51-60 (Sales Catalog). The "Warranty-Guarantee" section of the terms and conditions in the catalog stated that "[a]ll merchandise is sold on an 'AS IS/WHERE IS' basis, without warranty or guarantee as to condition, fitness to use, or merchantability stated, implied or otherwise. Please bid from your personal observations." *Id*. at 51. In the catalog, the Volkswagen Passat that the plaintiff bought from the Customs Service was listed as lot number 96. *Id*. at 55.

Following the "auction, successful bidders [we]re presented with an invoice" that listed the vehicles purchased, total bids, remaining outstanding balance, and advised that "all merchandise [was] sold on an 'as is/where is' basis with no warrantees or guarantees as to condition, fitness to use, or merchantability stated or implied." Def.'s App. at 61 (Invoice). "In order to take possession of the [vehicle], the bidder must . . . present the invoice to McCormack personnel." Def.'s App. at 46 (Declaration of Fulghum) ¶ 10.

Mrs. Rodriguez alleges that "[t]o the best of [her] recollection, at no time did [she] see the sales catalog for the auction," Pls.' App. Ex. 7 (Declaration of Ali Jazmin Rodriguez) ¶ 5, even though a catalog was "generally and customarily made available by McCormack to bidders at the auction." Def.'s App. at 46 (Declaration of Fulghum) ¶ 9. Furthermore, Mrs. Rodriguez asserts that despite being the successful bidder on the two vehicles listed on the invoice, Def.'s App. at 61 (Invoice), and having received both vehicles and the Certificate to Obtain Title to a Vehicle, she does "not recall receiving an invoice with a disclaimer on it." Pls.' App. Ex. 7 (Declaration of Ali Jazmin Rodriguez) ¶ 6. Ultimately, however, "[f]ailure to read the terms of a contract, particularly when so directed," such as by the signed Bidder Registration Form, "cannot be used as a defense." *Richardson Camera Co. v. United States*, 467 F.2d 491, 496 (Ct. Cl. 1972) (citing *Schoeffel v. United States*, 193 Ct. Cl. 923, 935 (1971)); *see also Fraas Surgical Mfg. Co. v. United States*, 571 F.2d 34, 40 (Ct. Cl. 1978).

The government argues that in light of the repeated "as is/where is" disclaimer language, Mrs. Rodriguez cannot state a claim for breach of contract. Def.'s Reply at 8-10, 12. The disclaimer language, the government avers, "simply means that the purchaser took the vehicle as it was and where it was at the time of sale, after the completion of whatever search was performed." *Id*. at 10. Mrs. Rodriguez counters that the fact that the vehicle was sold in a forfeiture sale conducted on behalf of the United States itself creates an implied warranty that the vehicle had been properly searched for contraband prior to its public availability. Pls.' Amended Response at 19. Moreover, she contends that the scope of the warranty disclaimer is not wide enough to incorporate the alleged failure of the government to properly search the vehicle. *Id*. at 20.

An "as is/where is" disclaimer has been held to be an enforceable contractual provision "sufficient to transfer the risk of loss to a purchaser of government property." *Pratt*, 50 Fed. Cl. at 477 (citing *Varkell v. United States*, 334 F.2d 653, 654 (Ct. Cl. 1964)). In a variety of circumstances, the United States has inserted "as is/where is" disclaimers in contracts for the sale of government property. *See, e.g., Edward Levy Metals, Inc. v. United States*, 485 F.2d 603, 604-

605 (Ct. Cl. 1973) (sale of two traveling crane gantries); *Varkell*, 334 F.2d at 654 (sale of surplus property); *United States v. Hathaway*, 242 F.2d 897, 899-900 (9th Cir. 1957) (sale of four sets of steel lock gates located below water); *Barstow Truck Parts & Equip. Co. v. United States*, 5 Cl. Ct. 224, 225 (1984) (sale of surplus property). The specific language used in the aforementioned cases, however, ostensibly disclaims more than the clause in the contract in the present case. *Compare Barstow Truck Parts*, 5 Cl. Ct. at 225 ("[A]ll property . . . is offered for sale 'as is' and 'where is.' The description of the property is based on the best information available . . . [and] the Government makes no warranty, . . . expressed or implied as to quantity, kind, character, quality, weight, size or description of any of the property, or its fitness for any use of purpose."), *with* Def.'s App. at 51 ("All merchandise is sold on an 'AS IS, WHERE IS' basis without warranty or guarantee as to condition, fitness to use, or merchantability stated, implied or otherwise."). Moreover, the government's counsel conceded that in seizure sales and auctions conducted on behalf of the Customs Service after the auction in the present case, the government used language that contained "stronger disclaimers . . . or, at least, more clear disclaimers." Hr'g Tr. 35:12-16.[10]

Based upon the contractual documents presented to the court in this case, the court concludes that plaintiff has stated a rudimentary claim for damages arising from an alleged breach of contract and that an amendment of her claim to elucidate further the damages alleged to be due would not be futile. The catalog that was made available to all registered bidders by McCormack indicated that the auction would offer for sale vehicles that had been seized by the Customs Service, Def.'s App. at 51 (Sales Catalog), a federal agency whose "principal responsibility" is to "interdict the narcotics coming into the" United States. Pls.' App. Ex. 1 (Deposition of Ahern) at 7:4-18. Moreover, the advertising brochure that EG&G produced stated that the public auction would sell vehicles seized by the government. Def.'s App. at 47 (Public Auctions Brochure). The prospective buyers, including Mrs. Rodriguez, were aware that the vehicles were available after being seized as a result of drug or other violations. Hr'g Tr. 20:18 to 21:19; *see* Pls.' App. Ex. 7 (Declaration of Ali Jazmin Rodriguez) ¶ 7. Therefore, an implied warranty respecting a reasonable search for drugs may have arisen in the contract between the government and plaintiff based upon the acknowledged context of how the vehicle had been obtained by the government.

The government contends that the "as is/where is" language disclaimed any implied warranty of the type asserted, Def.'s Reply at 10, but the court cannot agree based upon the plain meaning of the disclaimer. *See Record Steel and Constr., Inc. v. United States*, 62 Fed. Cl. 508, 513 (2004) ("If the language [of a contract] is explicit and unambiguous, the court must give effect to its plain meaning") (citing *L.W. Matteson, Inc. v. United States*, 61 Fed. Cl. 296, 307-308 (2004)). The contract specifically disclaimed express and implied warranties, but only respecting the vehicle's "condition, fitness to use, or merchantability." Def.'s App. at 51 (Sales

---

[10]The court has failed to discover, nor have the parties identified, any prior opinion from any court in which the exact disclaimer language at issue in the present case was interpreted or contested. Hr'g Tr. at 40:1-10, 59:15 to 60:6.

Catalog). The plain meaning of the terms "condition, fitness to use and merchantability" refers to the construction and maintenance of the vehicle and its utility for transportation, including how it operates mechanically.[11] These terms would not necessarily apply to whether the vehicle had been modified in a way that had no effect on its ability to function for transportation and introduced an attribute not ordinarily associated with such a vehicle, including affixing a box containing illegal drugs to the vehicle's underside. Thus, an implied warranty that the vehicle would be properly searched prior to its sale would fall outside the scope of the excluded terms.

This straightforward interpretation is strengthened by the fact that the disclaimer warned bidders that they should "bid from [their] personal observations." Def.'s App. at 51 (Sales Catalog). According to the record as it presently stands before the court, a bidder had a limited opportunity to inspect the vehicle prior to purchase. Hr'g Tr. 60:7 to 62:5 (indicating that all bidders were "allowed to get within a certain radius of the cars" but were not "allowed to touch them at all"). In at least one case that interpreted an "as is/where is" disclaimer, although the exact language covered a much wider scope than in the present matter, the plaintiff's failure to properly inspect the property that it purchased was held fatal to its claim of breach of contract. *See Varkell*, 334 F.2d at 655. The present record does not support any defense that the box containing the contraband would have been visible to a reasonable person performing a visual inspection at a distance from the vehicle.

Accordingly, an issue remains before the court that cannot be resolved at this procedural juncture. There may well have been an implied warranty that the vehicle had been reasonably searched for drugs, based upon the context in which the vehicles sold at auction were obtained.[12] Such an implied warranty would fall outside the scope of the contract's "as is/where is" disclaimer. Consequently, the government's motion to dismiss, or in the alternative, for summary judgment on Mrs. Rodriguez's claim is denied. She may amend her complaint to restate the damages she has allegedly suffered.

2. *Breach of the implied covenant of good faith and fair dealing.*

Mrs. Rodriguez also alleges that the government violated the contract's implied covenant of good faith and fair dealing when it failed to "thoroughly inspect" the vehicle for contraband before it became available to the public at auction. Compl. ¶ 43. She in effect contends that the

---

[11]The terms "fitness to use" and "merchantability" substantially overlap; an implied warranty of merchantability is a warranty that the property is fit for the ordinary purposes for which it is used. *See* Black's Law Dictionary 1582 (7th ed. 1999).

[12]Submissions to the court indicate that the Customs Service had a policy in place respecting how a search of a seized vehicle should be conducted prior to its public sale. Pls.' Amended Response at 3-7; *see, e.g.,* Pls.' App. Ex. 4 (Deposition of Joseph Marilao (June 9, 2004), *Rivera Agredano, et al. v. United States*, *et al*., No. 02-CV-2243 B (NLS) (S.D. Cal.)) at 25:2-8 (stating that the search policy was a seven-point inspection).

Customs Service did not follow its policy on properly searching the vehicle for illegal drugs because the Service "decided to limit searches for the purpose of increasing [the] resale value of the vehicle" without disclosing this decision to potential purchasers. Pls.' Amended Response at 21. The United States counters that the plaintiff has failed to state a claim because she has not offered sufficient proof that the government intended to injure her. Def.'s Mot. at 13. In addition, the government avers that the "as is/where is" warranty language in the contract disclaims any obligation on the part of the Customs Service. *Id*. at 15-17.

"[I]n every contract there exists an implied covenant of good faith." *Southern Cal. Edison v. United States*, 58 Fed. Cl. 313, 325 (2003) (quoting 13 *Williston on Contracts* § 38:15 at 437); *accord Asco-Falcon II Shipping Co. v. United States*, 18 Cl. Ct. 484, 491 (1989); *Restatement (Second) of Contracts* § 205. The covenant obligates both parties "not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contracts." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005); *see also First Nationwide Bank v. United States*, 431 F.3d 1342, 1349-51 (Fed. Cir. 2005). For a plaintiff to successfully assert a claim for breach of the implied covenant of good faith and fair dealing respecting a contract with the government, she "must allege and prove facts constituting a specific intent to injure [the] plaintiff on the part of a government official." *Pratt*, 50 Fed. Cl. at 479 (citing *Texas Instruments, Inc. v. United States*, 991 F.2d 760, 768 (Fed. Cir. 1993)); *see Southern Cal. Edison*, 58 Fed. Cl. at 325 ("'plaintiff[] must allege facts which if proved would constitute malice or an intent to injure'" (internal citations and quotation marks omitted)). The intended injury may be as simple and straightforward as elimination of tax benefits previously granted. *See First Nationwide Bank*, 431 F.3d at 1350-51.

For some time, litigation about the covenant of good faith and fair dealing has been infused with disagreement about the effect of the presumption that government officials act in good faith. *See Am-Pro Protective Agency v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002) (citing *Knotts v. United States*, 121 F. Supp. 630 (Ct. Cl. 1954)). In *Am-Pro*, the Federal Circuit recognized that courts in the circuit were using two different descriptions of the appropriate standard of proof necessary to overcome the presumption that a government official had acted in good faith. *Am-Pro*, 281 F.3d at 1239-40; *compare Schaefer v. United States*, 633 F.2d 945, 948-49 (Ct. Cl. 1980) (requiring "well-nigh irrefragable proof") *with George v. United States*, 166 Ct. Cl. 527, 531 (1964) (necessitating "clear evidence"). Ultimately, the court of appeals equated "well-nigh irrefragable proof" with the traditional clear and convincing standard of proof,[13] and held that the latter legal standard "most appropriately describes the burden of proof applicable to the presumption of the government[']s good faith." *Am-Pro*, 281 F.3d at

---

[13]The Federal Circuit has described the clear and convincing standard as a heavier burden than preponderance evidence but a lighter burden than proof beyond a reasonable doubt, and as a level of proof that "produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is highly probable." *Am-Pro*, 281 F.3d at 1240 (quoting *Price v. Symsek*, 988 F.2d 1187, 1191 (Fed. Cir. 1993)).

1239; *see also Galen Medical Assoc., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004).[14] Questions about the meaning and strength of the presumption of the government's good faith are presented by Mrs. Rodriguez's allegations.

Mrs. Rodriguez proffers the testimony of a number of government officials regarding the policy guidance that was distributed to customs officers at ports of entry in Southern California, including San Ysidro where plaintiff's vehicle was initially obtained, setting out the manner in which seized vehicles were to be searched. Pls.' App. Ex. 1 (Deposition of Ahern) at 49:8 to 52:17 (confirming that a policy memo was issued by the Field Director of customs operations in Southern California), Ex. 2 (Deposition of Robert Root (June 24, 2004), *Rivera Agredano, et al. v. United States*, *et al*., No. 02-CV-2243 B (NLS) (S.D. Cal.)), at 29:6 to 32:17 (describing how canines would inspect vehicles for illegal narcotics on multiple occasions). Inspectors for the Customs Service are taught in training and by their supervisors to inspect seized vehicles and clear any illegal narcotics and other contraband that they discover. *See* Pls.' App. Ex. 4 (Deposition of Marilao) at 25:2-17 (detailing a seven-point inspection that was taught to customs inspectors), Ex. 5 (Deposition of Robert Bickers (June 9, 2004), *Rivera Agredano, et al. v. United States*, *et al*., No. 02-CV-2243 B (NLS) (S.D. Cal.)), at 26:21 to 27:7 (describing how as a contraband enforcement team supervisor the deponent would correct inspectors who "were under the impression they were not supposed to tear the vehicle up"). Despite this policy in the Customs Service, at least one former senior inspector stated that he is aware that other inspectors had been told to minimize the damage when inspecting a seized vehicle "for resale purposes." Pls.' App. Ex. 4 (Deposition of Marilao) at 26:2 to 27:2. Furthermore, another employee who worked at the San Ysidro border crossing had heard other inspectors discuss minimizing the amount of damage to seized vehicles during inspections. Pls.' App. Ex. 5 (Deposition of Bickers) at 26:23 to 27:23.

---

[14]In *Tecom, Inc. v. United States*, 66 Fed. Cl. 736 (2005), Judge Wolski of this court reviewed the history in this circuit of the presumption of good faith on the part of government officials and concluded that it "poses no special obstacle to parties alleging" a breach of the implied covenant of good faith and fair dealing. *Id*. at 771. Instead,

> [w]hen a government official acts under a duty to employ discretion, . . . and a lack of good faith is alleged that does not sink to the level of fraud or quasi-criminal wrongdoing, clear and convincing evidence is not needed to rebut the presumption [of good faith]. Instead, this may be inferred from a lack of substantial evidence, gross error, or the like. And when the government actions that are alleged are not formal, discretionary decisions, but instead the actions that might be taken by any party to a contract, the presumption of good faith has no application.

*Tecom*, 66 Fed. Cl. at 769 (citing *Moore v. United States*, 46 Ct. Cl. 139, 172-74 (1910)). Accordingly, he respectfully disagreed with opinions that have adopted and applied the clear and convincing evidence standard broadly when analyzing a potential breach of the implied covenant. Instead, Judge Wolski would limit applicability of the strong presumption elucidated in *Am-Pro* to situations where matters of fraud or quasi-criminal wrongdoing are alleged. *Tecom*, 66 Fed. Cl. at 771 n.41.

Resolving all inferences "in the light most favorable" to plaintiff in deciding whether to grant defendant's motion for summary judgment, *Matsushita*, 475 U.S. at 587-88 (1986) (internal citations and quotation marks omitted), the court concludes that Mrs. Rodriguez has stated a valid claim for breach of the implied warranty of good faith and fair dealing over which this court has jurisdiction. 28 U.S.C. § 1491(a)(1). Therefore, the government's motion to dismiss, or in the alternative, for summary judgment on Mrs. Rodriguez's claim that the Customs Service breached the implied covenant of good faith and fair dealing is denied. As with Mrs. Rodriguez's first cause of action, she should amend her claim to clarify the damages sought.

**CONCLUSION**

For the reasons set forth, the government's motion to dismiss, or in the alternative, for summary judgment, is GRANTED IN PART and DENIED IN PART. The government's motion to dismiss is GRANTED with respect to plaintiff Adrian Rodriguez's claims. The government's motion to dismiss, or in the alternative, for summary judgment with respect to plaintiff Ali Jazmin Rodriguez's claims is DENIED. Mrs. Rodriguez should amend her claims to clarify the damages sought, as explained above.[15]

Mrs. Rodriguez shall file an amended complaint by February 15, 2006. The government shall file an answer to Mrs. Rodriguez's Complaint on or before March 1, 2006. Thereafter, a status conference shall be held in this case on March 16, 2006, commencing at 2:00 p.m. EST by telephonic means.

IT IS SO ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge

[15]Plaintiffs' Motion to File Revised Brief and Supplemental Documents is GRANTED. Defendant's Motion to Strike is DENIED. Plaintiff Ali Jazmin Rodriguez's two Motions for Joinder in (1) Plaintiff Adrian Rodriguez's Response to Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment, and Statement of Uncontroverted Facts, and in (2) Plaintiff Adrian Rodriguez's Response to Motion to Strike and Request to File Revised Brief and Supplemental Pleadings, are hereby DENIED as moot because both Mr. and Mrs. Rodriguez have been co-plaintiffs in this action.