*ELECTRONICALLY FILED ON FEBRUARY 15, 2006*

No. 05-370C
(Judge Lettow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ALI JAZMIN RODRIGUEZ,

Plaintiff,

v.

UNITED STATES OF AMERICA

Defendants.

---

**PLAINTIFF ALI JAZMIN RODRIGUEZ'S FIRST AMENDED COMPLAINT FOR DAMAGES**

TERESA TRUCCHI SBN# 135543
SUPPA, TRUCCHI, AND HENEIN, LLP
3055 India Street
San Diego, CA 92103
Telephone: (619) 297-7330
Telefax : (619) 297-9658

Attorneys for PLAINTIFF

ALI JAZMIN RODRIGUEZ
(and ADRIAN RODRIGUEZ)

February 15, 2006

**Plaintiff ALI JAZMIN RODRIGUEZ alleges as follows:**

## BASIS OF FEDERAL COURT JURISDICTION

1. The jurisdiction of this court is predicated on 15 USC §47, Sec. 2072(a)(Consumer Product Safety Act), 15 USC §50, Sec. 2310(d)(1)(B)(Federal Warranty Act); 28 USC §1346 (Tucker Act); and 28 USC §1350 (Alien Tort Claim Act).

2. Jurisdiction is proper in the United States Court of Federal Claims in Washington, D.C. as a result of an Order issued by the Southern District of California finding that the only viable causes of action arise under the Tucker Act [28 USC §1346].

. **INTRODUCTORY ALLEGATIONS**

3. ADRIAN RODRIGUEZ is, and at all times mentioned herein was, a citizen of the United States of America.

4. Plaintiff ALI JAZMIN RODRIGUEZ is, and at all times mentioned herein was, a citizen of the United States of America and the wife of ADRIAN RODRIGUEZ.

5. Defendant UNITED STATES OF AMERICA (hereinafter USA) is, and at all times mentioned herein was, a governmental entity organized under Federal law with the capacity to sue and be sued. USA is hereby sued on its own right and on the basis of the acts of its officials, agents, and employees, which were taken pursuant to USA's regulations, customs, and policies.

## STATEMENT OF FACTS

6. This case involves the seizure and subsequent sale of a Volkswagen Passat (1991) VIN: WVWFB4316ME017877 (hereinafter SUBJECT VEHICLE).

7. On or about June 6, 2001 the SUBJECT VEHICLE was purchased by an undisclosed individual who registered it with "border license plates" in the City of Tijuana, B.C. Mexico.

8. On November 18, 2002, the undisclosed individual drove the SUBJECT VEHICLE into the United Stated from the Republic of Mexico at the San Ysidro, California port of entry.

9. The unidentified individual was approached by a Custom Inspector (hereinafter "CI") who inspected the SUBJECT VEHICLE and discovered thirty two (32) packages weighing approximately thirty three (33) pounds that contained marijuana wrapped in cellophane in the rear

bumper and dashboard.

10. On November 18, 2002, the CI seized the SUBJECT VEHICLE and the marijuana under seizure number 2003250400023401.

11. The unknown individual is a citizen of Mexico, therefore he was turned over to the U.S. Department of Justice Immigration and Naturalization Service.

12. On February 20, 2003 in accordance with the provisions of Title 19, United States Code, section 1608 and 1610 and Title 19 of Federal Regulations, part 162.45, the SUBJECT VEHICLE was declared forfeited for violation of Title 19 United States Code, section 1595(a) or 1595a(c).

13. Thereafter, the SUBJECT VEHICLE was made available for sale to the public through a Federal Forfeiture Sale.

14. On March 5, 2003, ALI JAZMIN RODRIGUEZ acquired the SUBJECT VEHICLE from the Department of Treasury in a Public Auction following a Customs Service Department Federal Forfeiture Sale.

15. On or about July 15, 2003, ADRIAN RODRIGUEZ took the vehicle to a mechanic in Tijuana because it was making an unusual sound.

16. While being checked for repairs, the mechanic found thirty three (33) pounds of marijuana in a box on the underside of the SUBJECT VEHICLE's body. The manager of the repair shop called the police and two Municipal officers of Tijuana arrested ADRIAN RODRIGUEZ and seized the SUBJECT VEHICLE turning them both over to the Mexican Federal Agency of Investigations in Tijuana, Baja California, Mexico (hereinafter the AGENCY). Thereafter, additional marijuana was discovered in the SUBJECT VEHICLE during the criminal investigation by the Mexican officials.

17. On July 17, 2003, and pursuant to Articles 13 Section II, 193 and 195 of the Federal Criminal Code of Mexico and Article 21 of the Federal Criminal Procedure Code of Mexico, the AGENCY indicted ADRIAN RODRIGUEZ and turned his case over to the Federal Eighth District Court of the State of Baja California (hereinafter the DISTRICT COURT). On July 23,

2003, the DISTRICT COURT ordered the formal imprisonment of ADRIAN RODRIGUEZ, the suspension of his political rights and the issuance of Official Notice to the Federal Immigration Services of Mexico to record the case. Furthermore, the SUBJECT VEHICLE was impounded by the Mexican officials and declared forfeited.

18. On August 14, 2003, defense attorneys hired by ADRIAN and ALI JAZMIN RODRIGUEZ requested that the DISTRICT COURT issue a Rogatory Letter to the Consul General of Mexico in San Diego, California requesting the Consul's support in their efforts to obtain the seizure report and the forfeiture sale file of the SUBJECT VEHICLE.

19. ADRIAN and ALI JAZMIN RODRIGUEZ's defense attorneys were able to demonstrate that ALI JAZMIN RODRIGUEZ and ADRIAN RODRIGUEZ were ignorant of the existence of the illegal substance found in the SUBJECT VEHICLE and that if the U.S. Custom's agents would have performed a proper search of the SUBJECT VEHICLE, ADRIAN RODRIGUEZ would not have been arrested and the vehicle forfeited. The DISTRICT COURT found ADRIAN RODRIGUEZ innocent of all charges and released him from prison on August 14, 2003. The SUBJECT VEHICLE was not returned to ALI JAZMIN RODRIGUEZ.

20. Thereafter, in a response to a Freedom of Information Act request filed by plaintiff's counsel, photographs were produced by the USA showing that the area wherein the Mexican officials discovered the marijuana on July 15, 2003 had not been searched by the USA or its authorized agents. The United States of America sold a dangerous and defective product, released that product into the USA stream of commerce and failed to take responsibility when the defective nature of the product thereafter caused the purchaser of the product (the plaintiff) to suffer harm.

21. In the contract between ALI JAZMIN RODRIGUEZ and the USA there was an implied warranty that the vehicle had been reasonably searched for drugs. This implied warranty was based upon the context in which the vehicles were sold at auction (in that the same were presented to potential purchasers as the product of US government seizures). The implied

warranty fell outside the scope of "as is/where is" disclaimer contained in the sale documents. Breach of this implied contractual term and warranty, in this fashion and for this purpose, was particularly likely to cause serious emotional disturbance to the purchaser and did cause serious emotional disturbance to plaintiff ALI JAZMIN RODRIGUEZ. Upon the imprisonment of ADRIAN RODRIGUEZ, ALI JAZMIN RODRIGUEZ was denied the financial and emotional support of her spouse ADRIAN RODRIGUEZ. ALI JAZMIN RODRIGUEZ also suffered shock, anguish and physical illness due to stress and anxiety arising as a result of the discovery of marijuana in the vehicle she had purchased from the USA. She lost wages and became obligated to pay attorney fees to mitigate the damages caused as a direct and foreseeable result of the defendant's breach of the implied obligation to conduct thorough searches of seized vehicles. The type of serious emotional disturbance suffered by ALI JAZMIN RODRIGUEZ was a likely result of the defendant USA's practice of failing to conduct thorough pre-sale searches of seized vehicles. The probability of causing serious emotional disturbance by breaching this implied contractual obligation was dramatically increased by the defendant's practice of curtailing narcotic searches for the purpose of increasing the resale value of the vehicles. The practice of curtailing searches to increase the vehicle's resale potential occurred at the San Ysidro border crossing and continued despite knowledge of the probability that the failure to conduct thorough searches of seized vehicles would lead to the release of vehicles into the stream of commerce still containing narcotics.

22. On or about October 22, 2003, a government claim was submitted to the USA. The claim was denied by operation of law on or about April 22, 2004.

**FIRST CAUSE OF ACTION**

BREACH OF IMPLIED WARRANTY

23. On or about March 5, 2003, ALI JAZMIN RODRIGUEZ purchased the SUBJECT VEHICLE from USA.

24. Defendants and each of them were aware of the fact that the plaintiff relied upon the defendants, and each one of them, to act reasonably and in a manner that would not interfere and expose ALI JAZMIN RODRIGUEZ to serious emotional disturbance, loss of income, attorney fees, loss of reputation, embarrassment and exposure to criminal prosecution should the defendants carelessly and recklessly fail to fulfill the implied contractual obligation to ensure that the vehicle had been thoroughly inspected for narcotics prior to the release of the same into the stream of commerce through a government auction of seized vehicles.

25. There was an implied warranty that the SUBJECT VEHICLE was reasonably clear of contraband before releasing the same for sale to plaintiffs. The defendants, and each one of them, had exclusive control of the SUBJECT VEHICLE after the seizure and before the auction sale. The plaintiff expected the vehicle to be reasonably cleared of contraband before the vehicle was sold to her.

26. Defendants and each of them were aware of the plaintiff's reliance as outlined above. The plaintiff was free of conduct contributing to her damages.

27. The defendants knew, or should have known, that a failure to conduct a thorough and complete search would subject the purchaser to serious emotional disturbance, loss of income, attorney fees, loss of reputation, embarrassment and exposure to criminal prosecution if contraband was left in the vehicle at the time of the sale and thereafter discovered by law enforcement agents.

28. At the time of the transaction, it was reasonable to expect that the SUBJECT VEHICLE was reasonably clear of contraband. The USA had an official duty under its Customs' policies and procedures to thoroughly inspect the SUBJECT VEHICLE for narcotics before the same was released into the chain of commerce. It was foreseeable that the failure to conduct an adequate search and to remove excessive contraband would cause damage to any person who purchased said vehicle in the event and at the time that the hidden marijuana was discovered by any other law enforcement agency. As such, it was foreseeable that any purchaser of the SUBJECT VEHICLE would suffer damage if the vehicle was not reasonably cleared of contraband by the defendants.

29. The defendant sold a vehicle that did not comply with the implied warranty of merchantability by selling the SUBJECT VEHICLE with in excess of thirty three pounds of marijuana stored in a hidden compartment. This was a direct and foreseeable result of the incomplete and inadequate search. The defendant failed to conduct a reasonable and thorough search of the SUBJECT VEHICLE before authorizing the sale of the same to plaintiff. The USA officials' failure to conduct an adequate search was due to a local USA Border Patrol policy to curtail searches in order to avoid causing damage that could diminish the resale value of the vehicle.

30. The failure to ensure that the SUBJECT VEHICLE conformed to the expected quality and implied warranty was a substantial factor in causing plaintiff's harm. The failure to conduct a complete and thorough exam made the vehicle unsafe as it subjected the purchaser to embarrassment, loss of reputation, incidental and consequential damages should overlooked contraband be discovered by other law enforcement agents at a later date. The failure to conduct a compete and thorough exam caused recurring harm as there were multiple instances where purchasers and occupants were detained and arrested due to contraband overlooked by the USA prior to the USA Custom auctions of seized vehicles.

31. This breach caused damage to plaintiff on July 15, 2003 when ADRIAN RODRIGUEZ was arrested and imprisoned by the Mexican authorities after the discovery of the marijuana left in the SUBJECT VEHICLE by USA. ADRIAN RODRIGUEZ remained in Federal Prison in Mexico until he was declared innocent on August 14, 2003 however ALI JAZMIN RODRIGUEZ's serious emotional disturbance and other damages as a result of the breached implied warranty provision continued and continue to this day.

32. As a result of this breach of the implied warranty of merchantability existing at California Commercial Code §§2315, 2316, 2317, 2714, 2715 et. seq.; 15 USC 47, Sections 2068 et seq. and section 2072(a); 15 USC 50 sections 2308 et. seq.; Uniform Commercial Code §2a-216, 2-314, 2-212 et seq.; plaintiff has sustained damages including, but not limited to, serious emotional disturbance, injury to reputation, embarrassment, lost wages, loss of future earning capability, property damages

including the loss of the value of the vehicle, other incidental costs [such as attorney fees to mitigate losses, see; Comment c to Restatement (Second) of Contracts Section 347(b)] and consequential losses [see; Comment c and Illustration 4 to Restatement (Second) of Contracts Section 347(b)] in an amount to be established at trial.

**SECOND CAUSE OF ACTION**

BREACH OF CONTRACT

33. On or about March 5, 2003, ALI JAZMIN RODRIGUEZ purchased the SUBJECT VEHICLE from USA. The contract was in writing and consisted of a document to transfer title to ALI JAZMIN RODRIGUEZ.

34. An implied in fact and implied in law term of the contract was that the USA would conduct a complete and thorough search of the SUBJECT VEHICLE before it was sold at a public auction to ensure that excessive amounts of contraband were not remaining in the SUBJECT VEHICLE. The USA had an official duty under its Customs' policies and procedures to thoroughly inspect the SUBJECT VEHICLE for narcotics before the same was released into the chain of commerce. It was foreseeable that the failure to conduct an adequate search and to remove excessive contraband would cause damage to any person who purchased said vehicle in the event and at the time that the hidden marijuana was discovered by any other law enforcement agency. As such, it was foreseeable that any purchaser of the SUBJECT VEHICLE would suffer damage if the vehicle was not reasonably clear of contraband at the time of the sale.

35. The implied term to conduct a thorough and adequate search was breached when the USA failed to conduct a thorough and adequate search of the SUBJECT VEHICLE before selling the SUBJECT VEHICLE to ALI JAZMIN RODRIGUEZ. The USA officials failed to conduct an adequate search pursuant to a local USA Border Patrol policy to curtail searches in order to avoid causing damage that could diminish the resale value of the vehicle.

36. ALI JAZMIN RODRIGUEZ suffered damages as a result of the defendant's breach of the implied term to perform an adequate search of the SUBJECT VEHICLE.

37. The defendants, and each one of them, breached the implied term in the contract by selling the SUBJECT VEHICLE to ALI JAZMIN RODRIGUEZ with in excess of thirty three pounds of marijuana stored in a hidden compartment. The breach was a direct and foreseeable result of an incomplete and inadequate search by defendant's agents.

38. The breach of the implied term in the contract was a substantial factor in causing plaintiff's harm.

39. The breach of the implied term in the contract caused damage to plaintiff on July 15, 2003 when ADRIAN RODRIGUEZ was arrested and imprisoned by the Mexican authorities after the discovery of the marijuana left in the SUBJECT VEHICLE by USA.

40. ADRIAN RODRIGUEZ remained in Federal Prison in Mexico until he was declared innocent on August 14, 2003 however plaintiff ALI JAZMIN RODRIGUEZ's damages continue to this day.

41. As a result of the defendant's breach, plaintiff has sustained damages including, but not limited to, serious emotional disturbance, injury to reputation, lost wages, loss of future earning capability, property damages including the loss of the value of the vehicle, and other incidental costs [such as attorney fees to mitigate losses, see; Comment c to Restatement (Second) of Contracts Section 347(b)] and consequential losses [see; Comment c and Illustration 4 to Restatement (Second) of Contracts Section 347(b)] in an amount to be established at trial.

**THIRD CAUSE OF ACTION**

BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

42. On or about March 5, 2003, ALI JAZMIN RODRIGUEZ purchased the SUBJECT VEHICLE from USA. The contract was in writing and consisted of a document to transfer title to ALI JAZMIN RODRIGUEZ.

43. An implied in fact and implied in law term of the contract was that the USA would conduct a complete and thorough search of the SUBJECT VEHICLE before it was sold at a public auction to ensure that excessive amounts of contraband were not remaining in the SUBJECT

VEHICLE. The USA had an official duty under its Customs' policies and procedures to thoroughly inspect the SUBJECT VEHICLE for narcotics before the same was released into the chain of commerce. It was foreseeable that the failure to conduct an adequate search and to remove excessive contraband would cause damage to any person who purchased said vehicle in the event and at the time that the hidden marijuana was discovered by any other law enforcement agency. As such, it was foreseeable that any purchaser of the SUBJECT VEHICLE would suffer damage if the vehicle was not reasonably clear of contraband at the time of the sale.

44. The implied covenant of good faith and fair dealing was breached when the USA failed to conduct a thorough and adequate search of the SUBJECT VEHICLE before selling the SUBJECT VEHICLE. The USA officials failed to conduct an adequate search pursuant to a local USA Border Patrol policy to curtail searches in order to avoid causing damage that could diminish the resale value of the vehicle.

45. ALI JAZMIN RODRIGUEZ suffered damages as a result of the defendant’s breach of the implied covenant of good faith and fair dealing and is entitled to damages arising as a result thereof.

46. There was an implied covenant of good faith and fair dealing in the contract for the purchase of the SUBJECT VEHICLE from USA. The USA knew, or should have known, that the USA was in a position superior to that of the plaintiff in regard to the detection and removal of contraband and that the plaintiff would rely upon the USA to conduct a reasonable and adequate search. By curtailing the search to increase the potential resale value of the vehicles, the USA breached this covenant of good faith and fair dealing.

47. Plaintiff is informed and believe and thereon allege that the USA breached the covenant of good faith and fair dealing existing in the purchase contract by not reasonably searching the SUBJECT VEHICLE prior to its sale in order to avoid causing damage that could reduce the value of the SUBJECT VEHICLE at a public auction without disclosing the fact of the curtailed nature of the search to the purchaser.

48. Defendants and each of them were aware of the fact that the plaintiff relied upon the defendants, and each one of them, to act reasonably and in a manner that would not interfere and expose plaintiff to serious emotional disturbance, injury to reputation, lost wages, loss of future earning capability, property damages including loss of the value of the SUBJECT VEHICLE, and other incidental costs [such as attorney fees to mitigate losses, see; Comment c to Restatement (Second) of Contracts Section 347(b)] and consequential losses [see; Comment c and Illustration 4 to Restatement (Second) of Contracts Section 347(b)] in an amount to be established at trial.

49. The SUBJECT VEHICLE was not reasonably clear of contraband before releasing the same for sale to plaintiff. The defendants, and each one of them, had exclusive control of the SUBJECT VEHICLE after the seizure and before the auction sale. The plaintiff reasonably expected the vehicle to be reasonably cleared of contraband before the vehicle was sold to her as a result of the context in which the sale was advertised and the manner in which the sale was conducted by the defendant.

50. The defendants knew, or should have known, that a failure to conduct a thorough and complete search would subject the purchaser of the vehicle to serious emotional disturbance, injury to reputation, lost wages, loss of future earning capability, property damages including loss of value of the vehicle, attorney fees and other incidental and consequential losses in an amount to be established at trial if contraband was left in the vehicle at the time of the sale and thereafter discovered by law enforcement agents.

51. At the time of the transaction, it was reasonable to expect that the SUBJECT VEHICLE was reasonably clear of contraband. It was foreseeable that the failure to remove excessive contraband would cause damage to any person who purchased said vehicle in the event and at the time that the hidden marijuana was discovered by any other law enforcement agency. As such, it was foreseeable that any purchaser of the SUBJECT VEHICLE would suffer damage if the vehicle was not reasonably clear of contraband.

52. The defendants, and each one of them, breached the implied covenant of good faith and fair dealing in the contract by knowingly conducting a reckless and inadequate search in order to increase the resale value of the seized vehicle. The policy to curtail the search caused the SUBJECT VEHICLE to contain in excess of thirty three pounds of marijuana stored in a hidden compartment at the time that the SUBJECT VEHICLE was sold and released to plaintiff ALI JAZMIN RODRIGUEZ.

53. The breach of the implied covenant of good faith and fair dealing in the contract was a substantial factor in causing plaintiff's harm.

54. The breach of the implied term in the contract caused damage to plaintiff on July 15, 2003 when ADRIAN RODRIGUEZ was arrested and imprisoned by the Mexican authorities after the discovery of the marijuana left in the SUBJECT VEHICLE by USA. Plaintiff ALI JAZMIN RODRIGUEZ's damages continue to the present time.

55. ADRIAN RODRIGUEZ remained in Federal Prison in Mexico until he was declared innocent on August 14, 2003.

56. As a result of the defendant's breach, plaintiff has sustained damages including, but not limited to, serious emotional disturbance, injury to reputation, lost wages, loss of future earning capability, property damages including the loss of the value of the vehicle, and other incidental costs [such as attorney fees to mitigate losses, see; Comment c to Restatement (Second) of Contracts Section 347(b)] and consequential losses [see; Comment c and Illustration 4 to Restatement (Second) of Contracts Section 347(b)] in an amount to be established at trial

**PRAYER**

Plaintiffs pray judgment as follows:

1. For general, special, incidental, consequential, and statutory damages according to proof;

2. Statutory attorneys fees and costs according to proof including but not limited to attorney fees and costs pursuant to 28 USC §2412(d)(1)(A)[Equal Access to Justice Act] and CCP §1021.5;

3. For costs of suit herein incurred;

4. For such other and further relief as the court may deem proper.

DATED: February 15, 2006

SUPPA, TRUCCHI & HENEIN, LLP

s/Teresa Trucchi

By: TERESA TRUCCHI

Attorneys for Plaintiffs

3055 India Street

San Diego, CA 92103

Telephone: (619) 297-7330

Telefax : (619) 297-9658

CERTIFICATE OF ELECTRONIC FILING

This document was electronically filed on February 15, 2006 and served on opposing counsel electronically.

.DATED: February 15, 2006

SUPPA, TRUCCHI & HENEIN, LLP

s/Teresa Trucchi

By: TERESA TRUCCHI

Attorneys for Plaintiffs

SUPPA, TRUCCHI, AND HENEIN, LLP

3055 India Street

San Diego, CA 92103

Telephone: (619) 297-7330

Telefax : (619) 297-9658